[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 112.]

THE STATE EX REL. CAWTHORN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Cawthorn v. Indus. Comm.*, 1997-Ohio-241.]

*Workers' compensation—Industrial Commission does not abuse its discretion in finding a lack of "special circumstances" sufficient to support claimant's proposed increase in his average weekly wage, when.*

(No. 94-2734—Submitted January 21,1997—Decided April 2, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD11-1523.

_____

{¶ 1} On March 13, 1986, appellee-claimant, Larry D. Cawthorn, was injured in the course of and arising from his employment as a dairy herdsman. His employer, Roger Bollinger, certified claimant's workers' compensation claim as valid and indicated that claimant's weekly wages for the year preceding injury were as follows: (1) March 16, 1985 through August 31, 1985—$102 per week; (2) September 7, 1985 to date of injury—$123.15 per week.

{¶ 2} Appellant, Industrial Commission of Ohio, allowed claimant's workers' compensation claim for "pulled ligaments lower back," awarded him temporary total disability compensation, and set his average weekly wage ("AWW"). The amount of AWW is not contained in the record. In July 1986, claimant asked the commission to raise his AWW, arguing that the value of the free housing and utilities provided by his employer during the year prior to injury should be considered part of his remuneration and factored into the AWW compensation. A district hearing officer agreed, and on September 9, 1986, increased claimant's AWW to $256. Claimant did not appeal.

{¶ 3} In or around September 1987, claimant returned to work for Bollinger. At some point thereafter, he secured work with a different employer,

Producer's Service, Inc. ("PSI"). While at PSI, claimant in March 1990 reinjured his lower back. The injury was apparently deemed an aggravation of his initial injury and no new claim was allowed. Compensation and benefits were accordingly paid in the Bollinger claim.

{¶ 4} Dissatisfied with the amount of compensation, claimant in 1990 sought to increase his AWW to $521. Claimant submitted a W-2 tax form for 1989 and argued that because he was making $521 per week when reinjured, his AWW should reflect that amount.

{¶ 5} A district hearing officer denied claimant's motion, finding that:

"[T]here is no evidence which has been presented to justify resetting the average weekly wage based on an increase in claimant's post injury earnings. Ohio Revised Code 4123.62(A) does not apply in this claim."

{¶ 6} The order was administratively affirmed.

{¶ 7} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying him an increase in AWW. The appellate court did not reset claimant's AWW, but, instead, vacated the commission's staff order and returned the cause for further consideration and amended order.

{¶ 8} This cause is now before this court upon an appeal as of right.

————————————

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellant.

————————————

***Per Curiam.***

{¶ 9} R.C. 4123.61, at the time of the initial injury herein, read:

"* * * [T]he claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins shall be the weekly wage upon which compensation shall be based. In ascertaining

the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants."  (128 Ohio Laws 764-765.)

{¶ 10} The statute is significant both for what it does and does not say.  The statute provides a standard AWW computation that is to be used in all but the most exceptional cases.  It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings.  Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision.  This we decline to do.

{¶ 11} "Special circumstances" are not defined, but special circumstances have "generally been confined to uncommon situations."  *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267.  We note at the outset that it is not uncommon for earnings to change during the course of an employee's career.  To the contrary, it is generally anticipated.

{¶ 12} The appellate court's reliance on *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 634 N.E.2d 1014, is misplaced.  In that case, the claimant Clark had been a full-time waitress before leaving her employment in 1986 to care for an abused grandchild.  In 1988, she tried to return to the workforce on a limited basis in order to see how the grandchild would adjust to her absence from the home.  Three weeks later Clark was injured on the job.

{¶ 13} A district hearing officer initially set Clark's AWW at $13.49, dividing her wages during the year prior to injury ($53.94) by the four weeks that she had worked.  A second hearing officer later reset the figure at $20, which

reflected Clark's $10 hourly wage multiplied by the two hours per week that she was working at the time she was injured.

{¶ 14} Still dissatisfied with the AWW amount, Clark appealed to staff hearing officers and submitted evidence showing that she was by then working full-time at a department store making $208 per week. The commission did not, however, find that this evidence warranted further AWW recalculation and affirmed the earlier order.

{¶ 15} Upon appeal to this court, the commission's order was found to be unjust to Clark. We relied heavily on *Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 9 OBR 90, 458 N.E.2d 428, stressing that, like *Riley*, Clark had recently reentered the work force after an extended absence. Consequently, we found that Clark's short employment tenure was " 'obviously an unjust barometer of [Clark's] prospective future average wages that would be lost if [she] could not work.' " *Clark* at 566, 634 N.E.2d at 1016, quoting *Riley* at 73, 9 OBR at 93, 458 N.E.2d at 431.

{¶ 16} *Clark* has been equated with the instant case based on submission both here and in *Clark* of evidence of increased post-injury earnings. This is too simplistic a comparison, for *Clark*, upon a closer review, differs significantly from this case.

{¶ 17} First, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. Even after an initial increase, Clark's AWW was only $20, a figure which almost inherently and immediately raised substantial-justice concerns. Here, claimant's AWW was set at $256. This is not a figure that is inherently questionable, nor is it one where potential substantial-justice concerns are immediately apparent. Claimant's allegation of substantial injustice arose only when four years after his initial injury, claimant found himself making more money elsewhere. Thus, while the AWW in this case

4

does not automatically negate a finding of substantial injustice, *Clark* clearly presented substantial -injustice concerns.

{¶ 18} Second, unlike this case, it was not the mere increase in wages at a later time that generated further consideration in *Clark*. The key factor was the *reason* for that increase. Clark was making more money later because she was working more. The evidence of enhanced income was submitted to show that her earlier low wages resulted from a work pattern that when viewed in light of her work history was an aberration.

{¶ 19} Claimant unquestionably made less while employed by Bollinger than he did at PSI. The difference, however, is not due to inconsistent or sporadic work opportunities that might be labeled a "special circumstance." Claimant worked full time with Bollinger just as he did at PSI. Claimant made more at PSI not because he was working more hours, but because PSI chose to pay him more money than did Bollinger.

{¶ 20} The commission did not, therefore, abuse its discretion in finding a lack of special circumstances sufficient to support claimant's proposed increase in his AWW.

{¶ 21} Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., dissents.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 22} I would affirm the judgment of the court of appeals.

_____