DECISION
{¶ 1} In this original action, relator, Mancan, Inc., seeks a writ of mandamus compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order which granted temporary total disability ("TTD") compensation to respondent, Demetrius A. Holton, and which also set claimant's average weekly wage ("AWW") at $225, and ordering the commission to find that claimant is not entitled to TTD compensation and that his AWW should be set at $63.35.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision that includes findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that relator had not demonstrated that the commission abused its discretion in granting respondent Holton TTD. However, the magistrate did find that relator demonstrated that the commission abused its discretion in setting the claimant's AWW at $225 by utilizing the "special circumstances" provision of R.C. 4123.61, but without providing an explanation of why special circumstances exist in this case. Therefore, the magistrate recommended that this court grant the requested writ of mandamus as to the issue of the amount of the claimant's AWW. No objection has been filed to the magistrate's decision.
 {¶ 3} Pursuant to Civ.R. 53(E)(4), this court conducted a full review of the magistrate's decision. This court finds that there is no error of law or other defect upon the face of the decision. Therefore, this court adopts the magistrate's decision. The requested writ of mandamus is granted to the extent that the commission is ordered to vacate its previous order that set the claimant's AWW at $225 and to issue a new order in accordance with this decision.
Limited writ of mandamus granted.
Klatt, P.J., and French, J., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Mancan, Inc., : Relator, : v. : No. 05AP-883 Industrial Commission of Ohio : and Demetrius A. Holton, : Respondents. :
 MAGISTRATE'S DECISION Rendered on April 24, 2006 Lane, Alton Horst LLC, Jeffrey B. Hartranft and John C.Barno, for relator.
Jim Petro, Attorney General, and Derrick L. Knapp, for respondent Industrial Commission of Ohio.
Baran, Piper, Tarkowsky, Fitzgerald Theis Co., L.P.A., andJohn Tarkowsky, for respondent Demetrius A. Holton.
 IN MANDAMUS {¶ 4} Relator, Mancan, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Demetrius A. Holton ("claimant") and which also set claimant's average weekly wage ("AWW") at $225, and ordering the commission to find that claimant is not entitled to TTD compensation and that claimant's AWW should be set at $63.35.
Findings of Fact:
 {¶ 5} 1. On September 19, 2003, claimant sustained a work-related injury and his claim was originally allowed for "lumbosacral strain."
 {¶ 6} 2. It is undisputed that claimant had only been working for relator for approximately two weeks when he sustained his industrial injury.
 {¶ 7} 3. It is further undisputed that claimant began receiving TTD compensation following his injury. However, there is no evidence in the record concerning how claimant's AWW was calculated originally, which was what the original payment of TTD compensation was based upon.
 {¶ 8} 4. It is further undisputed that claimant's employment for the preceding two years had been sporadic. Specifically, claimant submitted a document in an attempt to demonstrate his work history prior to the date of injury. That document provides:
 May 16, 2002 Long John Slivers [sic] 6.00/HR
 June 10, 2002 Premier Staffing 8.00/HR
 September 10, 2002 Long John Slivers [sic] 6.25/HR
September 24, 2002
Ameritemps 8.00/HR
 September 16, 2003 Manpower 9.25/HR
Claimant also submitted his IRS 1040 for 2002 showing $5,162 in wages as well as three W-2 forms for 2003 indicating the following: Manpower Services, wages $402.23; Ameritemps, Inc., wages $160; Ameritemps, Inc., wages $52.
 {¶ 9} 5. Claimant's treating physician Dr. Jamar Williams submitted four C-84 forms certifying TTD compensation from October 1, 2003 through October 11, 2004, based upon the allowed conditions of lumbosacral strain/sprain.
 {¶ 10} 6. On August 26, 2004, claimant filed a motion requesting the following:
Now comes claimant, by and through counsel, who moves the BWC/Industrial Commission to reduce the amount of his claim for L5-S1 disk protrusion/herniation and to award any temporary total disability compensation and authorize medical treatment in conjunction with same if applicable. Claimant further requests an increase in his average weekly wage pursuant to ORC Section4123.60 and .61 to do substantial justice to the claimant. Claimant further requests that prescription medication be authorized and the bills for same be reimbursed to the claimant for the currently allowed conditions in the claim.
 {¶ 11} In support of that motion, claimant attached the January 22, 2004 MRI results which showed the following: "There is a central and right paracentral sub-ligamentous protrusion at L5-S1 that measures in anteroposterior diameter 8 mm, exerting mass effect on the rightward nerve sleeve." Claimant also submitted the March 3, 2004 report of Dr. William R. Fitz who diagnosed claimant with "[r]ight L5-S1 disc protrusion." Dr. Fitz recommended "a series of anywhere from 1-3 epidural injections. If he fails this, then he may need surgical consultation."
 {¶ 12} 7. Claimant also attached the September 22, 2004 report of his treating physician who indicated as follows:
We recently did get approval for physical therapy at Nova-care and he participating [sic] in this program. He remains temporarily disabled.
He has consistently complained of low back and radicular pain that includes the area of the right hip and into the right leg. He had X-rays of the lumbar spine on 10-02-03 and the results indicated narrowing of the joint space. He then had an MRI of the lumbar spine on 1-22-04 that confirmed the condition of a disc protrusion at L5-S1. This very well could account for his complaint of radicular pain into the right hip and leg.
He was then scheduled for a nerve conduction study that was performed on 2-6-04 and revealed polyneuropathy.
Based on all of these findings, it is my medical opinion that the claim needs to be amended to include the additional allowances:
1. Disc protrusion at L5-S1 722.2
2. Lumbosacral Radiculitis into right hip and right lower extremity 724.4
It is my medical opinion that these conditions are directly and causally related to the injury of 9-29-03.
 {¶ 13} 8. The record also contains the report of Dr. Mathew D. McDaniel who opined that claimant's lumbosacral strain had reached maximum medical improvement ("MMI") and that, in his opinion, the disc protrusion at L5-S1 was not caused by the industrial injury.
 {¶ 14} 9. Claimant's motion came before a district hearing officer ("DHO") on November 19, 2004. The DHO determined that claimant's claim should be additionally allowed for the condition of "L5-S1 disc protrusion." The DHO based that determination upon the February 6, 2004 EMG, the January 22, 2004 MRI, and the reports of Drs. Fitz and Williams as well as the claimant's testimony that he never had low back pain before the date of injury. The DHO also determined that claimant was to be reimbursed for certain prescription medications and the DHO authorized six weeks of physical therapy at a frequency of three treatments per week based upon a C-9 signed by Dr. Williams dated October 11, 2004. The DHO also found that TTD compensation should be terminated as of the date of the hearing because the C-84s submitted by Dr. Williams certified TTD compensation based only on the allowed condition of lumbosacral strain which the DHO had concluded had reached MMI based upon the November 4, 2004 narrative report of Dr. McDaniel. Furthermore, the DHO determined that claimant's AWW should be set as follows:
* * * In re-calculating average weekly wage at $63.35, the District Hearing Officer relies on the claimant's wages earned in 2002 and 2003. These wages total $5,828.23 per information from the 1040 tax return from 2002 and the W-2 statements for 2003 from Ameritemps and the employer of record. The District Hearing Officer excludes 12 weeks from the 104 denominator because the claimant was not working subsequent to his 09/29/2003 industrial injury. When $5,828.23 is divided by 92, the District Hearing Officer finds that the average weekly wage becomes $63.35.
The District Hearing Officer rejects the claimant's counsel's request to set average weekly wage based upon the claimant's hourly wage times the number of hours expected to work per week (40 per week). Given the claimant's very spotty work history in the two years prior to injury, the District Hearing Officer finds that this calculation method would provide a windfall to the claimant.
 {¶ 15} 10. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on March 21, 2005. The SHO modified the prior DHO order. The SHO concluded that claimant's claim should be additionally allowed for L5-S1 disc protrusion, authorized reimbursement for prescription medication, and authorized the six weeks of physical therapy with Dr. Williams. With regard to the issues of TTD compensation and AWW, the SHO determined as follows:
In view of the additional allowance and the therapy authorized this date, a finding of maximum medical improvement is not appropriate, and the report of Dr. McDaniel is not persuasive.
Payment of temporary total compensation is reinstated and is to continue upon submission of supporting medical evidence. This is supported by requests of Dr[s]. Fitz and Williams. It is found that the Full Weekly Wage is not an issue at this time.
Regarding the Average Weekly Wage, an exact calculation per the information on file is difficult. In order to do substantial justice without providing a windfall, the Average Weekly Wage is set at $225.00. This is an average of the hourly rates shown on the injured worker's 10/12/2004 letter ($7.50), times 30 hours per week, as the injured worker did not have a history of working a full 40 hour week.
 {¶ 16} 11. Relator's appeal was refused by order of the commission mailed April 15, 2005.
 {¶ 17} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 18} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} The "problem" raised in the present case stems from the fact that all of Dr. Williams' C-84s certify a period of TTD based upon the originally allowed condition of lumbar strain.
None of the C-84s list the newly allowed condition of L5-S1 disc protrusion as causing the current period of disability. However, based upon the reports of Drs. Fitz and Williams, the commission additionally allowed the claim for L5-S1 disc protrusion, ordered reimbursement of claimant's pharmacy expenses, and authorized physical therapy. Given that issues of credibility and the weight to be given evidence are within the discretion of the commission as fact finder, Teece, the magistrate finds that there is some evidence in the record to support the award of TTD compensation. See, also, State ex rel. Sellards v. Indus. Comm.,108 Ohio St.3d 306, 2006-Ohio-1058.
 {¶ 21} However, the magistrate finds that the commission abused its discretion in setting claimant's AWW at $225 without providing an adequate explanation for that determination. It is undisputed that, ordinarily, AWW is determined by dividing claimant's earnings for the year preceding the injury by 52 weeks. This is considered the "standard" formula as contained in R.C. 4123.61. The AWW is designed to find a fair basis for awards of future compensation and should approximate the average amount that claimant would have received had claimant continued working after the injury as the claimant had before the injury. State exrel. Riley v. Indus. Comm. (1983), 9 Ohio App. 371.
 {¶ 22} In Riley, the claimant first became employed three weeks prior to the injury. The commission set his AWW at $10.92 by dividing the income he received during those three weeks by 52 weeks. This court found that the commission had abused its discretion by not applying the "special circumstances" provision of R.C. 4123.61. This court determined that there were special circumstances involved because the claimant had first become employed three weeks prior to his injury and that an unjust result was reached when the commission only considered those three weeks.
 {¶ 23} In State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563, the Supreme Court of Ohio found that even though the claimant's reduced hours were voluntarily undertaken, the "special circumstances" provision of R.C. 4123.61 should be applied. The court explained that when a claimant has voluntarily limited their hours, the commission must inquire further and should not automatically refuse to find "special circumstances" just because they voluntarily limited their hours. In Clark,
the claimant had left full-time work to care for her granddaughter who suffered severe psychiatric problems. When her granddaughter's situation changed, the claimant reentered the workforce and was injured. The court found that "special circumstances" did exist and that substantial justice would not be done, in that case, if the standard formula was applied.
 {¶ 24} The relevant portion of R.C. 4123.61 provides:
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 25} In the present case, the record shows that claimant began working for the present employer on or about September 16, 2003. Claimant was injured on September 29, 2003. While the record does not indicate the number of hours claimant was working per week at the time he was injured, the record does indicate that claimant earned $402.23 in wages over this 13-day period.
 {¶ 26} Relative to claimant's prior work history, the record shows that in the year 2003, claimant's only other wages were $212 from his employment with Ameritemps, Inc. Based upon claimant's 2002 tax return, claimant earned $5,162 in 2002.
 {¶ 27} In the present case, the commission found that "special circumstances" exist; however, the commission's order does not explain the commission's reasoning for finding that "special circumstances" exist. There is nothing in that order to show whether the commission inquired of claimant as to whether or not he had voluntarily limited his hours over the last couple of years or whether there were other circumstances which had precluded him from working full time. While arguably the commission could find that "special circumstances" exist in the present case, the problem is that the commission's order simply does not provide an explanation for why "special circumstances" were found in this particular case. As the court stated inClark, the commission must inquire about the reasons why the claimant's hours had been limited and cannot determine the issue without an inquiry. The simple conclusion that "special circumstances" were found "[i]n order to do substantial justice without providing a windfall" simply is not sufficient without further findings and explanation since the "injured worker did not have a history of working a full 40 hour week."
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion both in granting claimant TTD compensation. However, relator has demonstrated that the commission abused its discretion in setting claimant's AWW at $225 by utilizing the "special circumstances" provision of R.C. 4123.61 without providing an explanation for why "special circumstances" apply in this particular case. As such, the magistrate finds that relator has demonstrated that the commission abused its discretion and this court should issue a writ of mandamus ordering the commission to vacate its order and to issue a new order in accordance with this decision.